DANIEL G. BOGDEN
United States Attorney
Nevada State Bar No. 2137
MICHAEL A. HUMPHREYS
Assistant United States Attorney
Lloyd D. George United States Courthouse
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
Telephone (702) 388-6336
Facsimile (702) 388-6787
Michael.Humphreys@usdoj.gov
Counsel for the United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

Plaintiff,

v.

$50,000.00 IN UNITED STATES CURRENCY,

Defendant.

2:13-CV-49

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by and through Daniel G. Bogden, United States Attorney for the District of Nevada, and Michael A. Humphreys, Assistant United States Attorney, in a civil cause for forfeiture, respectfully states as follows:

## SUBJECT MATTER JURISDICTION

1. This Court has jurisdiction under the provisions of 19 U.S.C. §§ 1603, 1608, and 1610; 18 U.S.C. § 983; 28 U.S.C. §§ 1345,1355 and 1395; 21 U.S.C. § 881; and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Fed. R. Civ. P. Supp. Rule").

## *IN REM* JURISDICTION

2. This Court will have *In Rem* jurisdiction over the defendant-currency if this Court signs an Order for Summons and Warrant of Arrest, *In Rem*, for the property and

the Clerk of the Court issues a Summons and Warrant of Arrest *In Rem*, which will be executed upon the defendant-currency and returned to this Court.

**VENUE**

3. This Court has venue over this matter pursuant to 28 U.S.C. §§ 1355 and 1395 because the above-named defendant-currency is now and, during the pendency of this action, will be in the jurisdiction of this Court and because the defendant-currency was found in this judicial district.

**PARTICULAR DESCRIPTION**

4. The defendant-currency is more particularly described as $50,000.00 in United States currency. At the time of the seizure, the currency was comprised of 500 one-hundred dollar bills.

**PLACE OF SEIZURE**

5. The currency was found inside of a car that was being driven by Oliver James and in which Heather Marie Leeman was a passenger. The car was stopped for a traffic infraction by a traffic patrol officer on August 24, 2012, while traveling in the southbound lane of traffic of I-15 near the 59-60 mile markers. The $50,000.00 was found inside of a computer bag, that was, in turn, inside of a nylon suitcase in the trunk of the car.

**CUSTODY OF ASSET**

6. The defendant-currency has remained in the custody and control of the United States Marshals Service, within the jurisdiction of this Court.

**TIMELY FILING**

7. The defendant-currency was subject to administrative summary forfeiture proceedings. However, on October 17, 2012, Oliver James Kwan filed an administrative claim with the Drug Enforcement Administration for the $50,000.00.

**VALUE**

8. The value of the currency is $50,000.00.

. . .

**FACTS**

9. On August 24, 2012, Detective R. Schaffner, of the Southern Nevada Interdiction Task Force, was on routine patrol along the I-15 corridor when he saw a silver Volkswagen sedan, being driven by Oliver James Kwan, speeding in the southbound lane of traffic. Det. Schaffner gave pursuit and stopped Kwan's car, without incident, near the 60 mile-marker. Heather Marie Leeman was sitting in the front passenger seat of the car.

10. When Detective Schaffner approached the cabin of the car to interview Kwan about the traffic infraction, he (Schnaffner) noticed that Kwan was unusually nervous. Schaffner saw Kwan's hands shaking several times during the first few minutes of the encounter.

11. Schaffner conducted a records check for Kwan and discovered, amongst other things, that in 2010, Kwan had been convicted on felony drug charges in Cook County Illinois. Kwan had also been arrested at least three separate times in Illinois, since 2000 on felony drug offenses.

12. Kwan explained to Detective Schaffner that his (Kwan's) trip had originated in Chicago; and that they had stayed overnight in Denver visiting Leeman's family. They were *en route* to Las Vegas when Schaffner had stopped their car.

13. Schaffner returned Kwan's driver's license and vehicle insurance information to him and advised him that he was free to go. Schaffner wished Kwan good luck gambling in Las Vegas as they prepared to part company. Kwan made a point of saying that he had strong beliefs against gambling. As Kwan walked back toward his car, Detective Schaffner asked Kwan to answer a few additional questions before he departed. Kwan agreed to stay and answer more questions. Schaffner asked Kwan whether he had any firearms, explosives or narcotics in the car. Kwan responded that he did not. When Detective Schaffner asked Kwan if he had any large sums of money in the car, Kwan became even more visibly nervous, paused and finally denied having any large sums of money in the car.

14. Kwan declined to give consent for Detective Schaffner to search his car. Schaffner's drug detection dog, "Sally," was on the scene and Schaffner promptly deployed "Sally" to conduct an exterior search of the car. During the course of that dog search, "Sally" reacted to the presence of a controlled substance as she came into the proximity of the driver's side door of Kwan's car.

15. Based upon "Sally's" reaction, Schaffner and his fellow officers conducted a search of the car. Inside the cabin of the car, the officers found a small quantity of marijuana inside a sandwich bag, as well as a similar small quantity of marijuana inside an orange pill bottle. Leeman claimed that the marijuana was hers. Officers also found a prescription, purportedly signed by a physician, attesting to the fact that Kwan would benefit from the use of medical marijuana.

16. Inside the trunk of the car, the officers found a blue and white nylon suitcase. Inside that suitcase, they found a black BMW computer bag, which, in turn contained the $50,000.00 in United States currency that is the defendant-property in this action. The currency was comprised of 500-one hundred dollar bills and was wrapped in rubber bands in a manner that is consistent with how couriers transport drug-derived proceeds from one place to another.

17. Kwan told the officers that the $50,000.00 was his. He stated that the money was derived from rent income that he received as a silent partner of a Chicago apartment building. Kwan said that he did not have any documents to support his ownership of the building because he was a silent partner. Kwan also said that he did not like to keep large sums of money in a bank account preferring to use his own safe for security. Kwan stated that he intended to use the money to purchase a bar and grill in the same apartment building that he had an interest in as a silent partner.

18. Kwan later contradicted his previous statement that he did have an account set up at a bank when he stated that he did have an account at Chase Bank but that he did not like to place large amounts of money into that account.

. . .

19. Kwan later stated that he intended to use the money for gambling, although moments earlier he had said that he was going to use the money to purchase a bar and grill. He had also previously said, during that same conversation, that he was opposed, in principle, to gambling.

20. Aside from his proceeds from the purported rental income, Kwan stated that he had not had salary-generating job since 2003.

21. Kwan also stated that he had not filed a federal income tax return since 2009.

22. Leeman told the officers that Kwan had said to her that they had to drive, rather than fly, from Chicago to Las Vegas because he had more than $10,000.00 in his possession.

**FIRST CAUSE OF ACTION**

23. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 22 as though fully set forth herein.

24. The defendant-currency was furnished or was intended to be furnished in exchange for controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq*., and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

**SECOND CAUSE OF ACTION**

25. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 24 as though fully set forth herein.

26. The defendant-currency is proceeds traceable to exchanges of controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq*., and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

**THIRD CAUSE OF ACTION**

27. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 26 as though fully set forth herein.

. . .

. . .

28. The defendant-currency was used or was intended to be used to facilitate violations of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq*., and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

**CONCLUSION**

29. Because of the foregoing, the defendant-currency is subject to seizure and to forfeiture and has become and is forfeited to the United States of America, plaintiff, pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America, Plaintiff, prays as follows:

1. Due process issue to enforce the forfeiture of the defendant-currency;

2. Due notice be given to any interested party to appear and to show cause why the forfeiture should not be decreed;

3. The defendant-currency be condemned and be forfeited to the United States; and

4. This Court enter other and further relief as it deems just and proper.

DATED this 10th day of January, 2013.

Respectfully submitted,

DANIEL G. BOGDEN
United States Attorney

/s/ Michael A. Humphreys
MICHAEL A. HUMPHREYS
Assistant United States Attorney

**VERIFICATION**

I, Jeffrey Bell DEA AGENT, am a Special Agent with the Drug Enforcement Administration. I have read and discussed the contents of the foregoing complaint. I declare and verify under penalty of perjury, that the foregoing is true and correct pursuant to 28 U.S.C. §1746(2).

Executed on this 9 th day of January, 2013.

Jeffrey Bell
Special Agent
Drug Enforcement Administration